1  SHAREEF S. FARAG (SBN 251650)
   KERRI H. SAKAUE (SBN 301043)
2  MATTHEW P. EATON (SBN 353597)
   **BAKER & HOSTETLER LLP**
3  1900 Avenue of the Stars, Suite 2700
   Los Angeles, CA  90067
4  Telephone:    310.820.8800
   Facsimile:    310.820.8859
5  Email:        *sfarag@bakerlaw.com*
                 *ksakaue@bakerlaw.com*
6                *meaton@bakerlaw.com*

7  *Attorneys for Defendant*
   IKEA DISTRIBUTION SERVICES, INC.
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIBEL GONZALEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLT MANAGEMENT CORP.; a Delaware Corporation; IKEA DISTRIBUTION SERVICES, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>[Kern County Superior Court, Case No. BCV-24-103281]<br><br>**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>*[Filed concurrently with Civil Cover Sheet, and Corporate Disclosure Statement]*<br><br>Action Filed:     September 26, 2024 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant IKEA DISTRIBUTION SERVICES, INC. ("IKEA"), by and through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California in and for the County of Kern (the "State Court") to the United States District Court for the Eastern District of California on the grounds that this Court has original jurisdiction under this action pursuant to the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)(2)), and on all other grounds for jurisdiction to the extent applicable. In support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, IKEA avers as follows:

**JURISDICTION AND VENUE**

1. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the CAFA.

2. This Court is in the judicial district and division embracing the place where the state court action was brought and is pending. Specifically, the United States District Court for the Eastern District of California embraces Kern County. Thus, this Court is the district court to which this case is properly removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

**THE ACTION & TIMELINESS OF REMOVAL**

**PROCEDURAL BACKGROUND**

3. On or about September 26, 2024, Plaintiff Maribel Gonzalez filed a putative Class Action Complaint (the "Complaint") against Defendants Volt Management Corp. ("Volt") and IKEA in the State Court, styled as *Maribel Gonzalez, as an individual and on behalf of all others similarly situated v. Volt Management Corp., a Delaware Corporation; IKEA Distribution Services, Inc., a Delaware Corporation; and Does 1 through 100, inclusive,* Case No. BCV-24-103281. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

4. On October 3, 2024, the registered agent for service of process for IKEA was personally served with copies of the Summons and Complaint. True and correct copies of the

Summons, and every other process, pleading and order served on IKEA are attached hereto as **Exhibit B**.

5. IKEA filed its Answer to the Complaint on October 31, 2024. A true and correct copy of the Answer filed by IKEA is attached hereto as **Exhibit C**.

6. IKEA makes no admission as to whether Volt has been properly served with process in the State Court Action. IKEA is informed and believes that there has been no service of process upon Does 1 through 100, which are fictitious defendants and therefore properly disregarded for the purpose of removal. 28 U.S.C. § 1441(a). Accordingly, IKEA is the only defendant needed to join and consent to this removal, but to the extent otherwise required, IKEA is informed and believes and on that basis asserts that Volt consents to and prophylactically joins in this removal.

7. Under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a)(1)(C), this Notice of Removal is timely filed, as the Notice is being filed within 30 days of service of the Summons and Complaint on IKEA in this action.[1]

## CAFA JURISDICTION

8. **Basis of Original Jurisdiction**. This Court has original jurisdiction of this action under CAFA. 28 U.S.C. § 1332(d)(2) and (5) provide that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members ("PCMs"), in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000. Section 1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant.

9. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d) because it is a civil action filed as a class action involving more than 100 members; the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, based on the allegations that Plaintiff set forth in the Complaint; Plaintiff and

---

[1] *See, e.g., Anderson v. State Farm Mutual Automobile Co.*, 917 F.3d 1126, 1128 fn. 1 (9th Cir. 2019) (extending deadline to file notice of removal to the following Monday when thirtieth day from service fell on weekend pursuant to Fed. R. Civ. P. 6(a)); *McGill v. Home Depot, Inc.*, 2015 WL 5441032, at *2 fn. 1 (N.D. Cal. Sept. 15, 2015) (same).

IKEA are citizens of different states; and no defendant is a state, state official, or government entity.

### DIVERSITY OF CITIZENSHIP

10.  CAFA's diversity requirement is satisfied when any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). The citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790, 794 (9th Cir. 1986). As the Ninth Circuit held, "[a] party's allegation of minimal diversity may be based on 'information and belief.' [citations omitted] The pleading 'need not contain evidentiary submissions.'" *Ehrman v. Cox Communications*, 932 F.3d 1223, 1227 (9th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014)).

11.  **Plaintiff's Citizenship**. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kantor*, 265 F.3d at 857.

12.  The Complaint alleges, "[a]t all relevant times herein, Plaintiff was and currently is, a California resident." Exhibit A, ¶ 3. As such, IKEA is informed and believes that Plaintiff, at the time of the filing of the action was, and still is, a resident of the State of California.

13.  **Citizenship of IKEA**. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Further, the United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*.

14.  IKEA is now, and at the time this action commenced was, a corporation formed under the laws of the State of Delaware. Pursuant to the *Hertz* nerve center test, the principal place of business of IKEA is in Pennsylvania, located at its corporate headquarters at 420 Alan Wood

Road, Conshohocken, Pennsylvania 19428, where the majority of its officers direct, control, and coordinate its corporate activities. Accordingly, for purposes of diversity jurisdiction, IKEA is, and at all relevant times has been, a citizen of the States of Delaware and Pennsylvania.

15. **Citizenship of Volt.** As a corporation, Volt is both a citizen of its state of incorporation and where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). As shown on the Secretary of State's Business Entities Search website, Volt is a corporation organized and existing under the laws of the State of Delaware with its corporate headquarters and principal place of business in Atlanta, Georgia. *See* URL at https://bizfileonline.sos.ca.gov/search/business (search for "Volt Management Corp."). Thus, IKEA is informed and believes that Volt was and is a citizen of the States of Delaware and Georgia for the purpose of determining minimum diversity jurisdiction. *See* 28 U.S.C. § 1332(d)(2).

16. **Doe Defendants**. Although Plaintiff has also named fictitious defendants "DOES 1 through 100," the presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants need not join in the removal petition). Thus, the existence of Doe defendants 1 through 100 does not deprive this Court of jurisdiction.

17. **Minimal Diversity**. IKEA has met the minimal diversity of citizenship required by CAFA, inasmuch as Plaintiff, a member of the putative class, is a citizen of California and IKEA is a citizen of Delaware and Pennsylvania. *See* 28 U.S.C. § 1332(d)(2).

## SIZE OF THE PUTATIVE CLASS

18. CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Here, Plaintiff has alleged and seeks to serve as a class representative of the following putative class: "all current and former non-exempt employees who worked for [IKEA], whether hired directly or through a staffing agency, in California … during the four years immediately preceding the filing of this action through the present." Exhibit A, ¶¶ 14.a. – 14.c.

19. Four years prior to Plaintiff's filing of the Complaint is September 26, 2020. During this time period, IKEA employed at least 981 individuals as hourly, non-exempt co-workers in the State of California. Therefore, per the Complaint allegations, the putative class size is at least 981.

## AMOUNT IN CONTROVERSY UNDER CAFA

20. Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement. *See, e.g., Cohn v. PetsMart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002). Here, that amount is at least $5,000,000, in the aggregate. *See* 28 U.S.C. § 1332(d).

21. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability") and *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").

22. Here, Plaintiff does not specifically allege any amount of damages or recoverable penalties in the Complaint, nor does she allege that the aggregate amount in controversy is less than $5,000,000. Therefore, IKEA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 84 (holding defendants need not submit "evidence" establishing CAFA jurisdiction in their removal papers; rather, defendants only need to provide "a short and plain statement of the grounds for removal"); *see also Al-Najjar v. Kindred Healthcare Operating, Inc.*, 2017 WL 4862067, at *2 (C.D. Cal. Oct. 26, 2017).

23. Plaintiff's Complaint pleads causes of action for: (1) failure to provide meal periods in violation of California Labor Code §§ 226.7, 512, and 558; (2) failure to provide rest periods in violation of California Labor Code §§ 226.7, 516, and 558; (3) failure to reimburse necessary business expenditures in violation of Labor Code §§ 2802 and 2804; (4) failure to provide

compliant wage statements in violation of California Labor Code § 226; and (5) unfair competition in violation of California Business & Professions Code § 17200, *et seq*. *See generally* Exhibit A.

24. Plaintiff's prayer for relief seeks an award of compensatory damages, consequential damages, general and special damages, statutory penalties, restitution, prejudgment interest, attorneys' fees, and "[s]uch other and further relief the Court may deem just and proper." *See id.*, Prayer for Relief.

25. **Amount in Controversy**. Without conceding that Plaintiff or the putative class members are entitled to or could recover damages in the amount or manner alleged, or at all, the amount in controversy in this putative class action conservatively exceeds $5,000,000, exclusive of interest and costs.[2]

### A. Failure to Provide Meal and Rest Periods.

26. In support of her First Cause of Action for failure to provide meal periods, Plaintiff alleges, **without qualification**, that IKEA "failed to provide Plaintiff and other [PCMs] with all legally compliant meal periods due to [its] unlawful meal period **policies/practices**." Exhibit A, ¶ 10 (emph. added). More specifically, Plaintiff alleges that IKEA "fail[s] to provide Plaintiff and other [PCMs] with meal periods that are 'net' 30 minutes in length, as required by law" because IKEA allegedly provides meal periods that "are exactly 30-minutes in length," but this "set duration fails to account for the time it takes Plaintiff and other [PCMs] to walk through [the] large facility [of IKEA] to and from the breakroom, thereby shortening their purported meal periods to less than 30 minutes 'net' in the designated rest area away from the employee's workstation." *Id.* Plaintiff further alleges IKEA "maintained a written meal period policy that provides 30-minutes for an unpaid meal period and states, 'Any additional time added to lunches or breaks is considered stealing time and will result in immediate termination.'" *Id.* Plaintiff further alleges that IKEA "failed to provide Plaintiff and other [PCMs] with a second duty-free, 30-minute meal period for shifts in excess of 10.0 hours in a single workday." *Id.* Instead, Plaintiff alleges IKEA "only

---

[2] This Notice does not concede and should not be construed as evidence that IKEA violated the legal rights of Plaintiff or any putative class members. The argument and the calculations of potential damages presented here are based on the allegations in the Complaint and solely for purposes of this Notice.

provide[s] for up to one single meal period per workday, regardless of the length of the shift, even when a work shift exceeds 10.0 hours in length." *Id.*

27. In support of her Second Cause of Action for failure to provide rest periods, Plaintiff alleges, ***without qualification***, that IKEA "failed to authorize and permit all lawful rest periods of at least 10 minutes for every four hours worked, or major fraction thereof for Plaintiff and other [PCMs] due to [its] unlawful rest period ***policies/practices***." *Id.*, ¶ 11 (emph. added). Plaintiff alleges IKEA "only authorize[s] and permit[s] Plaintiff and other [PCMs] to take rest periods of exactly 10 minutes in length, beginning the moment they leave their workstation and requiring Plaintiff and other [PCMs] to return to their workstations by the completion of the 10-minutes." *Id.* Plaintiff further alleges that IKEA "maintained a written rest period policy that authorizes and permits two 10- minute paid rest period[s] and states, 'Any additional time added to lunches or breaks is considered stealing time and will result in immediate termination.'" *Id.* Plaintiff further alleges that IKEA "only authorize[s] and permit[s] … up to two 10-minute rest periods per workday, regardless of the length of the shift, even when a work shift exceeds 10.0 hours in length." *Id.*

28. Plaintiff alleges IKEA did not "compensate Plaintiff and other [PCMs] with an additional hour of [meal and rest period] premium pay at [the PCMs' respective] regular rate of pay" when it failed to provide Plaintiff and PCMs with all legally compliant meal and rest periods to which they were entitled. *Id.*, ¶¶ 10, 11.

29. Plaintiff's Fifth Cause of Action alleging unfair competition in violation of the UCL purports to seek restitution for the alleged failure to pay all meal and rest period premium wages owed, which "occurred within the last four years immediately preceding the filing [of] this action." *See id.*, ¶¶ 39, 42.

30. Since September 26, 2020 to the present, at least 981 PCMs worked a total of approximately 123,298 workweeks. The putative class typically worked full-time schedules and regularly worked at least 8 hours per shift. The average hourly rate of pay among this group is approximately $22.31.

31. Assuming for purposes of this removal only a 20% violation rate for Plaintiff's meal break violation claim, the amount in controversy for Plaintiff's meal period claim is at least **$2,750,778** (calculated as: $22.31 average hourly rate × 123,298 workweeks since September 26, 2020 × 20% violation rate). Assuming a 10% rest break violation rate, the amount in controversy for Plaintiff's rest period claim is at least **$1,375,389** (calculated as: $22.31 average hourly rate × 123,298 workweeks since September 26, 2020 x 10% violation rate).

32. Given the Complaint's sweeping allegations, the above assumptions are very conservative because Plaintiff's unqualified allegations of "policies" and/or "practices" of failing to provide meal and rest periods reasonably justify a violation rate of *at least* 25%. *See Avila v. Rue21, Inc.*, 432 F.Supp.3d 1175, 1189 (E.D. Cal. 2020) ("[d]istrict courts have found . . . that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' allegation[s]."); *Bryant v. NCR Corporation*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) (finding reasonable a meal break violation rate of 60% — 3 meal break violations a week, and a rest break violation rate of 30% — 3 rest break violations every other week); *Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892, at *3 (C.D. Cal. April 14, 2021) (finding assumed 25% violation rate "conservative and reasonable"); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. 2017); *see also Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding allegations of "uniform policies, practices and procedures" allowed for a 100% violation rate). Indeed, it is reasonable for Defendant to assume a *100%* violation rate with respect to Plaintiff's break violations because such an assumption is grounded in Plaintiff's own unequivocal allegations that, due to Defendant's policies and practices, the allotted time for meal and rest breaks failed to take account for the time it takes for them to walk to and from their workstation and the designated rest area—which arguably applies to each and every break.

**B. Failure to Reimburse Necessary Business Expenditures**

33. In support of her Third Cause of Action for failure to reimburse necessary business expenses, Plaintiff alleges that due to "unlawful reimbursement ***policies/practices***," IKEA "failed to indemnify Plaintiff and [PCMs] for all necessary business expenses incurred, ***including, among other things***, personal cell phone usage." Exhibit A, ¶ 30. Plaintiff further alleges IKEA requires

8

"Plaintiff and other [PCMs] to communicate with coworkers and their supervisors regarding work-related matters through their personal cellular phones." *Id.*, ¶ 12. Plaintiff alleges "[IKEA] fail[s] to reimburse Plaintiff and other [PCMs] for a reasonable portion of their monthly cellular phone bills despite requiring the use of their personal cellular phones for business purposes." *Id.*

34. Plaintiff's Fifth Cause of Action alleging unfair competition in violation of the UCL purports to seek restitution for the alleged failure to reimburse all necessary business expenses incurred, which "occurred within the last four years immediately preceding the filing [of] this action." *See id.*, ¶¶ 39, 42.

35. In calculating the amount in controversy on Plaintiff's claim for unreimbursed business expenses, IKEA conservatively limits its calculations to only the cost of work-related personal cell phone usage. Assuming that PCMs were not reimbursed for the cost of their personal cell phones for usage charges during each pay period worked, and assuming conservatively that these PCMs would reasonably be entitled to 40% of the costs associated with their usage of personal cell phones, the amount in controversy for this claim is **$1,264,298** (calculated as: $51.27 average cost of cell phone service per bi-weekly pay period × 40% for work-related usage × a total of approximately 61,649 bi-weekly pay periods worked by the PCMs since September 26, 2020).

### C. Wage Statement Violations

36. Under Cal. Lab. Code § 226(e), an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226 ("Section 226") is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) per employee. This type of claimed violation is normally subject to a one-year statute of limitations.

37. In support of her Fourth Cause of Action for failure to provide compliant wage statements in violation of Labor Code § 226(a), Plaintiff alleges that IKEA, "knowingly and intentionally, as a matter ***of uniform policy and practice***, failed to furnish Plaintiff and [PCMs] with wage statements that complied with the requirements of Labor Code § 226(a)." Exhibit A, ¶

35 (emph. added). Plaintiff's wage statement violation claim is predicated on her claims for meal and rest break violations. To wit, she alleges, **without qualification**, that, "[a]s a result of" the alleged "failure to accurately compensate Plaintiff and other [PCMs] for all meal and rest period premium wages, [IKEA has] maintained inaccurate payroll records and failed to issue accurate itemized wage statements." *Id.*, ¶ 13. She further alleges that the "failure to furnish Plaintiff and [PCMs] with compliant wage statements resulted in actual injury, as said failures rendered Plaintiff and [PCMs] unable to readily ascertain the information on their wage statements." *Id.*, ¶ 36. Based on the foregoing, Plaintiff contends that these "failures create an entitlement to recovery by Plaintiff and [PCMs] … for all damages and/or penalties pursuant to [Section 226], including statutory penalties." *Id.*, ¶ 37.

38.  Based on Plaintiff's allegations, a 100% violation rate is properly applied to Plaintiff's wage statement violations claim, and courts have routinely accepted use of a 100% violation rate based on allegations similar to Plaintiff's here.[3] **First**, "[i]t is reasonable for [IKEA] to assume that [P]laintiff and all [PCMs] received inaccurate wage statements because the complaint draws no distinctions between the [PCMs] and [P]laintiff alleges that they are 'each entitled to recover' for the wage statement claim." *Rapisura v. BMW of N. Am.*, 2022 WL 1557001, at *5 (E.D. Cal. May 17, 2022) (emphasis in original); *see also* Exhibit A, ¶ 37. **Second**, it is also reasonable for IKEA to assume that each of the 13,354 wage statements issued to the 609 PCMs was inaccurate since Plaintiff alleges that IKEA has failed to provide PCMs with "all legally compliant meal periods" and "all lawful rest periods" due to its "unlawful meal [and rest] period policies/practices." *Id.*, ¶¶ 10, 11.[4]

---

[3] *See, e.g.*, *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (using 100% where defendant was alleged to have "failed to provide an accurate statement not just as to missed … breaks, but as to 'all the requirements under Labor Code § 226,' which '*from time to time*' resulted in inaccurate wage statements" (emph. added)); *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, *7 (C.D. Cal. Jan. 6, 2016) (100% rate "followed logically" from allegations of failure to accurately itemize all hours worked).

[4] *See, e.g.*, *Ramirez v. Carefusion Resources, LLC*, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) ("a 100% violation rate assumption—that every wage statement during the one-year period violated § 226—is not unreasonable" where plaintiff alleged unpaid overtime or missed meal and/or rest breaks); *Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *6 (C.D. Cal. Dec. 6, 2018) ("it is reasonable to assume a [100%] violation rate given the myriad allegations about widespread [unpaid wages] and meal period violations").

39. Since September 26, 2023, 609 PCMs were employed by IKEA and issued 13,354 wage statements that included payment of earned wages for actual hours worked (*i.e.*, excluding wage statements with payment for only paid time off or similar "hours"). Therefore, IKEA calculates the amount in controversy on Plaintiff's wage statement violations claim to be at least **$1,304,950**, calculated as follows:

| Initial Wage Stmts. | | Penalty Rate | | **Initial Penalties** | Subsequent Wage Statements | | Penalty Rate | | **Subsequent Penalties** |
|---|---|---|---|---|---|---|---|---|---|
| 609 | x | $50 | = | **$30,450** | 12,745 (13,354 less 609) | x | $100 | = | **$1,274,500** |
| $30,450 + $1,274,500 = **$1,304,950 Total Penalties**[5] | | | | | | | | | |

D. **Statutory Attorneys' Fees**

40. Plaintiff also seeks statutory attorneys' fees under various provisions of the California Labor Code and under Cal. Civ. Proc. Code § 1021.5 in connection with the causes of action alleged in the Complaint. *See, e.g.*, Exhibit A, ¶¶ 10, 32, 37, 43. Plaintiff expressly seeks attorneys' fees in connection with his expense reimbursement and wage statement claims, *see id.*, ¶¶ 32, 37, and Civ. Proc. Code § 1021.5 "provides for attorney's fees in a broad range of actions … as [a] 'private attorney general statute.'" *Perez v. Safety-Kleen Sys., Inc.*, 448 F. App'x 707, 708 (9th Cir. 2011).

41. In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court **must** include **future** attorneys' fees recoverable by statute or

---

[5] This total penalties amount in controversy represents an average of approximately $2,143 in penalties per PCM ($1,304,950 / 609), which is far less than the $4,000 per PCM maximum statutory penalty. *See* Cal. Lab. Code § 226(e).

contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses **all** relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)).

42. Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the total potential award as an estimate for attorneys' fees. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was proper, and in line with Ninth circuit precedent").[6] Thus, utilizing the calculation by IKEA of the amount in controversy on each of Plaintiff's causes of action and the 25% benchmark for attorneys' fees used in the Ninth Circuit, IKEA conservatively calculates the amount in controversy on Plaintiff's statutory attorneys' fees claims to be at least **$1,673,854** [$6,695,415 ($2,750,778 + $1,375,389 + $1,264,298 + $1,304,950) x 25%].

43. **Summary of Amount in Controversy.** Based on the foregoing, the amount in controversy on Plaintiff's Complaint is not less than **$8,369,269**, which exceeds the CAFA jurisdictional threshold:[7]

///

---

[6] *See also, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("'[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'"); *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case using an estimated fee award of 25% of the plaintiff's damages in calculating the amount in controversy); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

[7] Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or offer evidence as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.

| Cause of Action / Claim | Amount in Controversy |
|---|---|
| Failure to Provide Meal Periods (First Cause of Action) | $2,750,778 |
| Failure to Provide Rest Periods (Second Cause of Action) | $1,375,389 |
| Failure to Indemnify Business Expenditures (Third Cause of Action) | $1,264,298 |
| Failure to Provide Complete and Accurate Wage Statements (Fourth Cause of Action) | $1,304,950 |
| Statutory Attorneys' Fees | $1,673,854 |
| **Total:** | **$8,369,269** |

44.  This amount in controversy satisfies the standard for removal. *Dart Cherokee*, 574 U.S. at 81 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions."). Accordingly, removal of this action is proper under CAFA.

### CORPORATE DISCLOSURE

45.  Pursuant to Federal Rule of Civil Procedure 7.1, IKEA is filing a Disclosure Statement concurrently with this Notice of Removal.

### NOTICE

46.  As required by 28 U.S.C. § 1446(d), IKEA is providing written notice of the filing of this Notice of Removal to all parties and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California in and for the County of Kern.

Respectfully submitted,

Dated:  November 4, 2024        **BAKER & HOSTETLER LLP**

By:  */s/ Shareef S. Farag*
     SHAREEF S. FARAG
     KERRI H. SAKAUE
     MATTHEW P. EATON

*Attorneys for Defendant*
IKEA DISTRIBUTION SERVICES, INC.

**PROOF OF SERVICE**

I, Jennifer Gudino, declare:

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067.

On November 4, 2024, I served a copy of the within document:

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

| | |
|---|---|
| ☑ | **VIA EMAIL.** By transmitting by e-mail (electronic transmission) to the e-mail address(es) of the addressee(s). I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| ☑ | **VIA U.S. MAIL.** By placing the documents listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |

**HAINES LAW GROUP, APC**  *Attorneys for Plaintiff,*
Paul K. Haines  MARIBEL GONZALEZ on behalf of herself and
Fletcher W. Schmidt  others similarly situated
Matthew K. Moen
2155 Campus Drive, Suite 180
El Segundo, California 90245
Email: *phaines@haineslawgroup.com*
        *fschmidt@haineslawgroup.com*
        *mmoen@haineslawgroup.com*

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on November 4, 2024, at Los Angeles, California.

_____
Jennifer Gudino

PROOF OF SERVICE